RONEY, Senior Circuit Judge,
dissenting:
I respectfully dissent, largely on the reasoning of the district court Order deciding that the issuance by the Department of the Interior’s U.S. Fish and Wildlife Service of an Incidental Take Permit renders this case moot. I understand the technical points and reasoning that argue for a contrary conclusion, but sometimes it is important to step back and view the fabric as a whole, especially when considering important conservation issues Congress committed to the expertise of an administrative agency.
The issues concerning the endangered turtles, of course, are not moot. The very fact they are covered by the Act reflects that serious measures must be taken in order to preserve the species. It is important that there be efficient and effective measures to protect all endangered turtles, but Congress has wisely assigned to the Department of the Interior extensive responsibilities under the Endangered Species Act. See Babbitt v. Sweet Home Chapter, Communities for Great Oregon, 515 U.S. 687, 708, 115 S.Ct. 2407, 132 L.Ed.2d 597 (1995) (“When it enacted the ESA, Congress delegated broad administrative and interpretive power to the Secretary.”). Along with these responsibilities comes the power to permit incidental “takes” as long as those takes do not threaten the continued existence of the species. See 16 U.S.C. § 1539(a) (1994). “The permit process requires the applicant to prepare a ‘conservation plan’ that specifies how he intends to ‘minimize and mitigate’ the ‘impact’ of his activity on endangered and threatened species, 16 U.S.C. § 1539(a)(2)(A).” Siveet Home, 515 U.S. at 700, 115 S.Ct. 2407. It does not make sense to litigate in federal court the issue of incidental takes caused by artificial lights when those lights are regulated by the conservation plan provisions of a valid Incidental Take Permit. Compare National Ass’n of Home Builders v. Babbitt, 130 F.3d 1041, 1044-45 (D.C.Cir.1977), cert. denied, — U.S. -, 118 S.Ct. 2340, 141 L.Ed.2d 712 (1998) (when incidental take permit holder proposes to violate conservation plan, new take permit may be required).
As I understand it, there are two kinds of takings involved here. Baby turtles born at night crawl to the light, nature having made that light the reflection of the moon on the water. Artificial shoreline lighting and vehicular lighting disorients these turtles and instead of crawling to the water, they crawl away from the water. One kind of taking as a result is undisputed: the killing of the turtles by motor vehicles driving on the beach during this period. The plaintiffs con *1259 cede that the Permit covers the incidental taking that occurs by motor vehicles as a result of the disorientation from artificial shoreline lights, as .well as lights on the vehicles themselves.
Whether there is any taking due to shoreline artificial lights other than by vehicles is in dispute. The U.S. Fish and Wildlife Service has implemented an Artificial Beachfront Lighting Management Plan, however, which is designed to modify to the extent practical the lighting that disorients turtles during the critical nesting periods. This plan requires a detailed survey of artificial beachfront lights and contemplates more restrictive lighting regulations in the near future, all under the direct supervision of the U.S. Fish and Wildlife Service.
The Endangered Species Act authorizes the Department of, the Interior to permit incidental “takes.” The language focuses on the incidental takes themselves,'rather than the activity that actually causes the takes. 16 U.S.C. § 1539(a)(1)(B). I would agree with the Ninth Circuit’s reasoning that where incidental takes are “clearly contemplated by the incidental take statement,” they are excepted from liability under the Endangered Species Act. Ramsey v. Kantor, 96 F.3d 434, 442 (9th Cir.1996). See also Hamilton v. City of Austin, 8 F.Supp.2d 886 (W.D.Tex.1998) (incidental take permit not required where valid scientific permit to take endangered salamander had been granted by U.S. Fish and Wildlife Service).
The Permit includes not only the two plaintiff turtle species, but the leatherback turtle, which plaintiffs sought to include as a party plaintiff, and two other species of turtles as well. It requires Volusia County to work with experts from the U.S. Fish and Wildlife Service, the Florida' Department of Environmental Protection, the local lighting company, and even the municipalities of Day-tona Beach and Daytona Beach Shores.
The conservation plan approved by the U.S. Fish and Wildlife Service requires Volu-sia County within one year to conduct an extensive survey of all artificial lights along its beachfronts and document any problems that might be caused by those lights. . It requires Volusia County over the following two years to correct any of those problems. Only then, if it proves impractical or cost prohibitive to correct any remaining problems, might the issuance of an Incidental Take Permit be necessary.
Common sense would dictate that the Agency would not implement such a plan if it did not permit such incidental taking as might occur during the management plan, if any, in addition to the taking through vehicular- activity. If the agency does not properly protect the interests here involved under the statute, the parties have a remedy through the Administrative Procedures Act. In my judgment, it is a serious mistake, a waste of government resources, and an unjust expense to the parties to try to run parallel litigation of these issues in the district court while the problem is under the management of the federal agency.
Even if this case were not moot, I would invoke the primary jurisdiction doctrine and stay the case pending further administrative proceedings before the U.S. Fish and Wildlife Service. The primary jurisdiction doctrine is a flexible tool that is designed to allocate efficiently fact finding between the federal courts and administrative agencies. See United States v. Western Pac. R. Co., 352 U.S. 59, 63-64, 77 S.Ct. 161, 1 L.Ed.2d 126 (1956). The doctrine is “applicable to claims properly cognizable in court that contain some issue within the special competence of an administrative agency. It requires the court to enable a ‘referral’ to the agency---Referral of the issue to the administrative agency does not deprive the court of jurisdiction; it has discretion either to retain jurisdiction or, if the parties would not be unfairly disadvantaged, to dismiss the case without prejudice.” Reiter v. Cooper, 507 U.S. 258, 268-69, 113 S.Ct. 1213, 122 L.Ed.2d 604 (1993).
This case involves a question of fact-whether artificial beachfront lighting “takes” sea turtles-that is not only within the special competence of the U.S. Fish and Wildlife Service, but is actually being reviewed by that agency. The Incidental Take Permit requires Volusia County to provide the U.S. Fish and Wildlife Service with information regarding lights which potentially disorient turtles and, if necessary, develop an appro *1260 priate mitigation plan. If the U.S. Fish and Wildlife Service determines that artificial beachfront lighting does indeed “take” turtles but does not threaten the continued existence of the species, then it is empowered by statute to craft a flexible solution to the problem of incidental takes. In this case, the U.S. Fish and Wildlife Service has already issued an Incidental Take Permit that comprehensively regulates artificial beachfront lighting. Invoking the primary jurisdiction doctrine would avoid a judicial solution that might conflict with the regulatory scheme already approved by the appropriate administrative agency. See Friends of Santa Fe County v. LAC Minerals, Inc., 892 F.Supp. 1333, 1350 (D.N.M.1995). Considering the statutory responsibilities given to the Secretary of the Interior Department by Congress when it passed the ESA, I would hold in this case that the U.S. Fish and Wildlife Sendee is in a better position than a federal court to resolve the dispute at this time.
In any event, there seems to be no question that the district court case is moot if the Incidental Take Permit includes, in addition to takings by motor vehicles, such other takings, if any, caused by artificial lights. If that issue is indeed in doubt, this Court could simply require a stay of the district court proceedings while the defendant repairs to the Agency to get a clarification on that point.